UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAY DOUCET                                                    CIVIL ACTION

VERSUS                                                        NO. 18-9048

NANCY A. BERRYHILL, ACTING                                   SECTION "M" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff Jay Doucet seeks judicial review pursuant to Section 405(g) of the Social

Security Act (the "Act") of the final decision of the Commissioner of the Social Security

Administration (the "Commissioner"), denying plaintiff's claim for a period of disability

and disability insurance benefits ("DIB") under Title II of the Act and for supplemental

security income ("SSI") under Title XVI of the Act. 42 U.S.C. § 1382c. The matter was

referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule

73.2E(B).

I.      PROCEDURAL HISTORY

On January 31, 2013, Doucet filed a Title II application for a period of disability and

DIB, and on March 7, 2013, he filed a Title XVI application for SSI. (Tr. 603–12). Both

applications alleged a disability onset date of April 1, 2012. Id. After his claim was denied

at the agency level, plaintiff requested a hearing before an Administrative Law Judge

("ALJ"), which was held on January 13, 2014, in Metairie, Louisiana. (Tr. 469–93).

Plaintiff appeared in person and was represented by counsel. Id. The ALJ issued a decision

on March 19, 2014, finding that Doucet was not disabled. (Tr. 453–63). On March 28,

2014, Doucet requested review of the ALJ's decision. (Tr. 23–24). The Appeals Council denied plaintiff's request for review on May 9, 2018, finding no basis to overrule the ALJ's decision. (Tr. 7–12). Plaintiff requested reconsideration of the Appeals Council's decision on May 17, 2018, on grounds that the Appeals Council had committed legal error by failing to review plaintiff's entire memorandum of facts and law. (Tr. 18–24). The Appeals Council again denied plaintiff's request for review on August 9, 2018, and the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1–6).

Plaintiff filed his complaint in this court on September 28, 2018. Record Doc. No. 1. Doucet timely filed his memorandum of facts and law on January 11, 2019. Record Doc. No. 8. The Commissioner timely filed her reply memorandum of facts and law on February 11, 2019. Record Doc. No. 9.

II.    STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    The ALJ committed reversible error in finding that plaintiff's chronic kidney disease did not constitute a severe impairment.

B.    The ALJ did not apply the correct legal standard in assessing plaintiff's residual functional capacity, and that finding is not supported by substantial evidence.

Record Doc. No. 8 at p. 10.

III.    ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

1.    Doucet meets the insured status requirements of the Act through December 31, 2016.

2.    Plaintiff has not engaged in substantial gainful activity since April 1, 2012, the alleged disability onset date.

3.    He has severe impairments consisting of acute gout flare-ups in the hands and feet, and degenerative joint disease in the first metatarsophalangeal ("MTP") of both feet.

4.    Doucet has non-severe impairments consisting of renal cysts, kidney disease, hypertension and high cholesterol.

5.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6.    Doucet has the residual functional capacity to perform light work with certain postural limitations.

7.    Plaintiff cannot perform his past relevant work as a carpentry and construction worker.

8.    Considering plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform, including office clerk, information clerk and laundry attendant.

9.    Doucet has not been under a disability from April 1, 2012, the alleged disability onset date, through March 19, 2014, the date of the ALJ's decision.

(Tr. 453–63).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363–64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. McCaskill v. Dep't of Health & Human Servs., 640 F. App'x 331, 332–33 (5th Cir. 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

4

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for period of disability and DIB, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2016). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] Id. §§ 404.1520, 416.920; Alexander

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period

v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720–21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner

---

of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.      Factual Background

At the ALJ hearing, Doucet testified that he was 46 years old, six feet tall and weighed 235 pounds. (Tr. 473). He stated that he had graduated from high school Id. Plaintiff said that he worked in the glass industry for several years, installing windows, showers, mirrors and storefronts. (Tr. 473–44). Doucet testified that at any given time, he would be responsible for lifting approximately 100 pounds. Id.

Doucet said that he subsequently obtained a part-time job with the New Orleans Pelicans basketball team ("Pelicans"), in which he would identify players on a tracking camera system on game nights. Id. Plaintiff testified that during his shifts he would sit down at a computer. Id. He said that he earned $50 per game and worked approximately 20 games throughout a typical 40-game basketball season. Id. He stated that he was compensated about $1,000 for the entire basketball season. Id.

Plaintiff stated that he worked as a carpenter's helper from 2002 to 2008, which consisted of helping his friend whenever the friend needed plaintiff. (Tr. 475). He testified that his duties included measuring, transporting and lifting items, some of which plaintiff described as "too heavy"for a single person to lift by himself. Id.

Plaintiff said that he owned a glass installation business from 1997 to 2002, for which he also performed labor. Id. Doucet stated that as owner of the business, he was

responsible for sending out invoices and paying bills. Id. He testified that when he performed glasswork, he would lift 100 to 200 pounds. (Tr. 476). Plaintiff said that he would need to ask for help from others if the object was too heavy for him to lift alone. Id.

Doucet stated that he was laid off from his most recent glass-working job in 2011. Id. Doucet explained that he was laid off because his superiors told him "things weren't working out." Id. Doucet said that he was never given an explanation for the lay-off, but speculated that it was related to his colon problem and need to use the bathroom 15 to 20 times per day. (Tr. 477). He stated that since the lay-off, his frequent need to use the bathroom had not improved. Id. He testified that he began receiving unemployment benefits after the lay-off and stopped receiving these benefits after the first quarter of 2013. Id.

Doucet stated that he is constantly looking for a full-time job, but his frequent need to use the bathroom makes it difficult to find a job that will accommodate him. Id. He noted that his part-time job with the Pelicans is accommodating because there is a bathroom near his work area and he is allowed to get up any time he needs to use it. Id. Plaintiff testified that the pain in his back, hands and feet also prevents him from working a full-time job. Id. Doucet said that he has been in the emergency room a few times because he could not walk. Id.

Plaintiff stated that he goes to the doctor every four months for his kidney problems. (Tr. 478). Doucet said his doctor told him that he would need to prepare for a kidney transplant within a year of the hearing. Id. Doucet testified that he "went from stage three,

to stage four, and the next stage will be dialysis and a transplant." Id. He stated that he was not on dialysis as of the date of the hearing. Id.

Plaintiff testified that his rheumatoid arthritis affects his ability to walk and place his feet on the ground. Id. He said that he has lost a lot of strength in his hands and struggles to grab objects. Id. Doucet stated that he had a colon removal in 2005. (Tr. 479). He said that he worked jobs following the colon removal. Id. Plaintiff testified that since the colon removal, he cannot go anywhere unless he knows where the bathroom is located. Id. He said that he has frequent bowel movements. Id. He stated that he visited a sleep apnea doctor and had tests performed, based on his frequent drowsiness during the day. Id. Plaintiff testified that the doctor told him he did not have sleep apnea and that his tiredness was based on his frequent need to wake up in the middle of the night to relieve his bowels. Id. Doucet said that he uses the bathroom about three times per night. Id.

Plaintiff stated that he receives medical treatment for rheumatoid arthritis at East Jefferson General Hospital. (Tr. 479–80). He said that he goes to New Orleans Nephrology for kidney disease treatment. (Tr. 480). He stated that Dr. Stephen Lecour provides treatment for his kidney cysts, and Dr. Rick Harris at New Orleans Nephrology provides treatment for his kidney disease. Id.

Doucet stated that he lives with his mother, who recently had a stroke. Id. He said that his mother cannot do much around the house and that he helps her with household chores. Id. He said that on a typical day, he cleans the house and occasionally does some

yard work. Id. Doucet said that he also cooks for his mother, vacuums the house and helps his mother do the laundry. Id. He testified that he used to cut three or four lawns, but now he struggles to finish a single lawn. Id. He stated that he cuts one lawn every 10 days. (Tr. 481).

Douvet stated that he has "cut back" on socializing with his friends. Id. He said that his friends like to go out to bars, but he refrains from joining them because he does not drink alcohol and most bar bathrooms are unpleasant places. Id. He testified that he will go to sporting events with his friends, such as Saints football and Pelicans basketball games when he is not working those games. (Tr. 482).

Doucet stated that he can stand on his feet and walk for about an hour before his feet and lower back start to hurt. Id. He said that if he sits for about an hour he needs to stand for a while to alleviate the tightness in his feet, hands and lower back. Id. He testified that he believed his pain and tightness were a result of his arthritis. (Tr. 483). He said that when he stands up to walk around, he feels as if he has a limp until his body loosens up again. Id. Plaintiff testified that he began seeing Dr. Joseph Diundo on December 30, 2013, for his arthritis. Id. He stated that he previously saw Dr. Mindy Chin for arthritis, but stopped seeing her because Dr. Chin would "make mistakes" that plaintiff would regularly have to correct. Id. Plaintiff testified that he scheduled a follow-up appointment with Dr. Diundo on January 20, 2014. (Tr. 484). He testified that approximately 15 x-rays of his hands and

feet were taken at East Jefferson General Hospital's diagnostic imaging center shortly after January 1, 2014. Id. He stated that he brought those x-rays to Dr, Diundo. Id.

Plaintiff said that on a normal day he will lie down for three 45-minute intervals. (Tr. 485). He stated that he does some grocery shopping with his mother and sometimes with his girlfriend. Id. He stated that he and his girlfriend like to hang out and watch movies on television. Id. Doucet testified that he has been treated for gout in his hands and feet. Id. Plaintiff said that he does not have a computer at home. (Tr. 486). He testified that he cannot read. Id. He stated that he enjoys fishing and fishes about twice a year. Id. Doucet said that he fishes on a boat belonging to one of his friends. Id. He explained that his friends will sometimes come to his house to watch games on television, and sometimes he watches games at his friends' houses. Id.

C.    Vocational Expert Testimony

A vocational expert, Karen Harrison, testified at the hearing. (Tr. 487). Harrison testified that Doucet performed carpentry and construction work as a glass installer and glass setter, which is "heavy, semi-skilled" work. (Tr. 488). She stated that plaintiff also worked as an auto glass installer, which is "medium, semi-skilled" work. Id.

The ALJ posed a hypothetical of an individual of plaintiff's age, education and work history who can perform work of the "light exertional level" and who can occasionally climb ladders, ramps and scaffolds. (Tr. 489). Harrison stated that such an individual could not perform any of plaintiff's past jobs as actually performed or generally performed in the

11

national economy. Id. Harrison testified that such an individual could perform jobs such as office clerk, information clerk and laundry attendant. (Tr. 489–90).

Harrison stated that an individual in an office clerk, information clerk and laundry attendant position who needed to use the bathroom eight times a day, for 10 minutes each time, could perform those jobs adequately. (Tr. 490–92). Harrison testified that generally, an employee "can be off task 10 percent of the day," which includes bathroom breaks. (Tr. 492). Harrison stated that if the same hypothetical individual requiring frequent bathroom use additionally had a large amount of pain caused by rheumatoid arthritis, then that individual would be off-task for 50 percent of the day and would not be able to perform the jobs of office clerk, information clerk or laundry attendant. Id.

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the evidence. (Tr. 453–63). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1. Plaintiff's kidney disease is not a severe impairment.

Plaintiff argues that the ALJ should have found his kidney disease to be a severe impairment because his "frequent need to use the restroom and requirement of access to adequate bathroom[s] at all times of the day would significantly limit" his ability to work. Record Doc. No. 8 at p. 14. To support his assertion, plaintiff cites his subjective complaints to his doctors that the kidney disease was interfering with his activities of daily living, a sleep study that found that plaintiff's frequent bathroom use causes "constant fatigue," and his hearing testimony that he uses the bathroom 15 to 20 times per day. (Tr. 477, 479 763, 766). He also references his testimony that many of his prospective job options are not compatible or accommodating to his restroom needs. (Tr. 477).

At Step Two of the sequential evaluation, the ALJ must determine which of the claimant's impairments are severe. An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922. Under Fifth Circuit precedent, "[a]n impairment can be considered as not severe <u>only if</u> it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." <u>Loza v. Apfel</u>, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting <u>Stone v. Heckler</u>, 752 F.2d 1099, 1101 (5th Cir. 1985)). Although the record may contain a diagnosis of a condition such as kidney disease, "mere diagnosis of [an impairment] does not establish a severe impairment or the existence of a functional limitation." <u>Schultz v. Astrue</u>, 2010 WL

13

2733605, at *9 (E.D. La. June 8, 2010), report & recommendation adopted, 2010 WL 2733565 (E.D. La. July 8, 2010).

In his decision, the ALJ cited the relevant standard for severity and explained why he found that plaintiff's kidney disease was not a severe impairment, based on objective medical evidence and plaintiff's hearing testimony. (Tr. 457, 459–60). The ALJ found that the medical evidence of record did not establish that plaintiff's kidney disease was a severe impairment and did not support plaintiff's testimony regarding the alleged frequency of his bathroom use. (Tr. 459–60).

Subjective complaints must be corroborated by objective medical evidence. Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). As to objective medical evidence of plaintiff's kidney disease, a report prepared by Dr. Friedrichs Harris states that plaintiff was diagnosed with Stage 3 chronic kidney disease on February 8, 2012. (Tr. 747). A follow-up report prepared by Dr. Harris on August 15, 2012, stated that plaintiff's chronic kidney disease was stable and advised plaintiff to return for a follow-up appointment in six months. (Tr. 751). Lab reports for plaintiff's blood work were ordered by Dr. Harris from early 2012 to early 2013. (Tr. 754–60). The ALJ referenced Dr. Harris's reports in his decision and noted that "the record contains no treatment notes reflecting examinations by Dr. Harris after August 2012." (Tr. 460). The ALJ found that in light of the evidence that plaintiff's kidney disease was stable and the lack of evidence of follow-up

appointments for kidney disease treatment since February 2013, the record medical evidence did not establish that plaintiff's kidney disease was a severe impairment. Id.

As to objective medical evidence of plaintiff's bathroom use, plaintiff underwent multiple kidney examinations before and after his alleged disability onset date of April 1, 2012. Dr. Stephen LaCour performed these examinations on August 10, 2011; February 13, 2012; and August 13, 2012, and Dr. LaCour's reports consistently state that plaintiff's "bladder demonstrate[s] to be normal." (Tr. 770, 779–80, 829, 834, 838–39). Moreover, the May 21, 2013 case analysis reports prepared by reviewing physician Dr. Joseph Michalik noted plaintiff's kidney problems and reports of needing to urinate frequently, but did not indicate that such conditions were severe enough to prevent him from working, despite causing "some limitations in [plaintiff's] ability to perform work related activities." (Tr. 499–500, 509–12). Plaintiff's sleep study report, prepared by Dr. Henry Jackson and referenced in the ALJ's decision, notes plaintiff's complaints that he is often awakened by the need to use the bathroom and states that plaintiff suffers from fatigue as a result of his "constitutional systems." (Tr. 459, 808). However, as the ALJ noted, the sleep study report makes no mention of plaintiff's purported need to use the restroom 15 to 20 times per day. (Tr. 459, 801–27).

In addition, vocational expert testimony and plaintiff's own testimony do not support plaintiff's purported bathroom use limitation. Plaintiff noted that his part-time job with the Pelicans was accommodating to his needs because there was a bathroom near his work area

and he was permitted to get up any time he needed to use it – indicating that jobs do exist in the local economy that comport with plaintiff's reported restroom needs and there are employers that will make adjustments and accommodations for plaintiff during the workday. (Tr. 477). Moreover, the vocational expert testified that an individual who uses the bathroom 15 to 20 times per day – approximately eight times per work day, for 10 minutes each time – could adequately perform office clerk, information clerk and laundry attendant positions in the national economy. (Tr. 490–92). The expert also testified that an employee "can be off task 10 percent of the day" – the approximate amount of time an individual using the bathroom 15 to 20 times per day would require use of the bathroom during the work day – and that the definition of "off-task" includes bathroom breaks. (Tr. 492). Therefore, even if plaintiff required use of the bathroom with the frequency cited in his testimony, such a need would not affect his ability to perform work in the national economy.

Based on the objective medical evidence, the hearing testimony of plaintiff and the vocational expert and the reasons cited in the ALJ's decision, the ALJ properly determined that plaintiff's purported need to use the bathroom frequently throughout the day was not a significant limitation on his ability to work and that plaintiff's kidney disease was not a severe impairment.

Furthermore, plaintiff's argument concerning severity of his kidney disease at Step Two is moot because the ALJ's opinion clearly reflects that he proceeded beyond Step

Two to consider <u>all</u> of Doucet's claimed impairments – even the non-severe impairment of kidney disease – in his assessment of Doucet's disability. <u>Dise v. Colvin</u>, 630 F. App'x 322, 324 (5th Cir. 2015); (Tr. 456–61). Having found that Doucet had severe impairments, the ALJ proceeded through subsequent steps of the evaluation, considered all of the evidence concerning plaintiff's medically determinable impairments – both severe and non-severe – and found at Step Five that he is capable of performing light work, with certain postural limitations. Thus, Doucet's case "'did not turn on whether or not [Doucet's kidney disease] impairment was severe but on subsequent steps in the analysis." <u>Dise</u>, 630 F. App'x at 324 (citing <u>Chaparro v. Bowen</u>, 815 F.2d 1008, 1011 (5th Cir. 1987)). The ALJ's failure to find at Step Two that Doucet's kidney disease impairment was severe is irrelevant and non-prejudicial to him. Because substantial evidence supports the ALJ's finding that plaintiff's kidney disease is not severe for the reasons cited in the ALJ's opinion, plaintiff's first assignment of error is meritless.

> ### 2. The ALJ's residual functional capacity finding is supported by substantial evidence.

Before deciding at Step Four of the sequential evaluation whether a claimant can return to his past relevant work, the ALJ must determine his residual functional capacity, which is the person's "ability to do physical and mental tasks on a sustained basis despite limitations from h[is] impairments. In determining residual functional capacity, the Commissioner must consider all of a claimant's impairments, including those that are not severe." <u>Giles v. Astrue</u>, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545). Residual

functional capacity "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence." Perez, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is solely responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Taylor v. Astrue, 706 F.3d 600, 602–03 (5th Cir. 2012).

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" Fontenot v. Colvin, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting Taylor, 706 F.3d at 603) (brackets in original). "The ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" Ramirez, 606 F. App'x at 779 (quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); accord Yates v. Colvin, 606 F. App'x 225, 229 (5th Cir. 2015) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). When the ALJ has relied on reports from examining and reviewing physicians and adequately dealt with any dispute between them, his residual functional capacity determination "must be upheld under the substantial evidence standard, because reliance on the analysis of these doctors is more than a mere scintilla, and any evaluation of the accuracy of the analysis is beyond the scope of this court's review." Fontenot, 661 F. App'x at 277 (citing Taylor, 706 F.3d at 603; Perez, 415 F.3d at 461; Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).

Based on consideration of plaintiff's testimony, objective medical evidence and supported medical opinions, the ALJ found that Doucet has the residual functional capacity

to perform light work,[2] with the following postural limitations: he can only occasionally climb ladders, ropes and scaffolds. (Tr. 456–61). The ALJ found that plaintiff had severe impairments of acute gout flare-ups in the hands and feet and degenerative joint disease in the first MTP of the left foot and right foot, and that plaintiff's subjective allegations were not consistent with the medical evidence of record. Id. At Step Four, the ALJ determined that plaintiff was unable to perform his past relevant work as a carpentry/construction worker, glass installer and auto glass installer. (Tr. 461). At Step Five, however, the ALJ found that plaintiff could perform other available jobs that exist in significant numbers in the national economy. (Tr. 461–62).

In his second assignment of error, Doucet argues that the ALJ's residual functional capacity findings are not supported by substantial evidence. Record Doc. No. 8 at p. 10. Specifically, plaintiff contends that the ALJ gave undue weight to the opinion of reviewing physician Dr. Michalik in reaching his residual functional capacity conclusion, Dr. Michalik's status as a non-examining state expert makes his opinion unreliable, and Dr. Michalik's residual functional capacity assessment was incomplete because the record was still developing when Dr. Michalik submitted his opinion. Id. at pp. 16–17. In addition, plaintiff argues that the ALJ discounted plaintiff's testimony, improperly gave minimal weight to the opinion of treating physician Dr. Shannon Ceasar and failed to explain the

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

19

weight he gave to the opinions of Drs. Howard Brenner, Friedrichs Harris and Stephen LaCour. Id. at pp. 14–15.

Plaintiff argues that the ALJ improperly gave substantial weight to Dr. Michalik's opinion because Dr. Michalik "never examined Plaintiff" and was a "state agency consultant whose functions are restricted to file review only." Id. at p. 16. However, "[s]tate agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)); accord Stephens v. Barnhart, 174 F. App'x 232, 233 (5th Cir. 2006) (citing Carry v. Heckler, 750 F.2d 479, 482 (5th Cir. 1985); 20 C.F.R. § 404.1527(f)(2)(i)); Glass v. Barnhart, 158 F. App'x 530, 532 (5th Cir. 2005); Walker v. Halter, 252 F.3d 434 (5th Cir. 2001). It is well-established that the ALJ may rely on the function-by-function analysis of the impact of a claimant's impairments on his ability to perform various tasks completed by a non-examining state expert such as Dr. Michalik. Beck v. Barnhart, 205 F. App'x 207, 213-14 (5th Cir. 2006) (citing Onishea v. Barnhart, 116 F. App'x 1, 2 (5th Cir. 2004); Myers v. Apfel, 238 F.3d 617, 620–21 (5th Cir. 2001); accord Weatherspoon v. Astrue, 2013 WL 5507293, at *5 (E.D. La. Sept. 30, 2013)

(citing <u>Onishea</u>, 116 F. App'x at 2). Thus, the fact that Dr. Michalik never examined plaintiff has no bearing on the ALJ's ability to rely on Dr. Michalik's medical opinion as it related to plaintiff's impairments and ability to perform tasks. Plaintiff's second assignment of error is without merit insofar as it argues that the ALJ's findings were unsupported by substantial evidence by virtue of his reliance on a non-examining state expert's opinion.

In assessing plaintiff's residual functional capacity, the ALJ afforded significant weight to Dr. Michalik's opinion. (Tr. 461). Dr. Michalik reviewed the entire medical record as of May 21, 2013. (Tr. 500). Dr. Michalik concluded that plaintiff had the residual functional capacity to perform light work, but recommended postural limitations of occasional climbing of ladders, ropes and scaffolds. <u>Id</u>. Dr. Michalik explained that his recommended postural limitations were based on plaintiff's hand swelling and pain. <u>Id</u>. The ALJ's decision demonstrates that he carefully considered and weighed all the evidence before concluding that Dr. Michalik's analysis of plaintiff's impairments and ability to perform various tasks should be afforded great weight. The ALJ's stated reason for affording Dr. Michalik's opinion great weight was that Dr. Michalik's conclusion was consistent with objective medical evidence of findings of plaintiff's degenerative joint disease, hand swelling and decreased grip strength. <u>Id</u>.

The objective medical findings Dr. Michalik used to support his conclusion were cited extensively in the ALJ's opinion and supported the ALJ's conclusion that plaintiff had impairments of degenerative joint disease and acute gout flare-ups in the hands and feet. (Tr.

458). The ALJ referenced plaintiff's gout diagnosis and joint pain treatment in 2012 and 2013. (Tr. 730–42, 770–801). The ALJ also cited plaintiff's December 2012 x-ray studies that provided evidence of plaintiff's degenerative joint disease. (Tr. 739–42). As stated above, "mere diagnosis of [an impairment] does not establish a severe impairment or the existence of a functional limitation." Schultz, 2010 WL 2733605, at *9. Despite the evidence and diagnoses, the ALJ found that plaintiff's physical examinations "returned few findings to support the severity of the pain and extent of the limitations alleged at [plaintiff's] hearing." (Tr. 458). The ALJ noted that plaintiff's medical records from 2012 and 2013 indicated that plaintiff had minimal swelling of his right ankle, normal range of motion of the upper and lower extremities, no indication of limited use of the hands or fingers and good muscle strength in the lower and upper extremities. (Tr. 458, 731–37, 791–801). After considering the objective medical evidence of gout and degenerative joint disease, the ALJ found that plaintiff would have difficulty standing and walking for extended periods and lifting heavy weights. (Tr. 458).

The ALJ also noted that plaintiff's testimony established that plaintiff's daily activities of cooking, cleaning, grocery shopping, attending sporting events, working part-time for the Pelicans and using a computer at the workplace showed that he "retains a significant amount of physical functioning" and "the ability to engage in at least light exertion." (Tr. 459). Further, the ALJ stated that plaintiff's ability to use a computer in his part-time job "indicates that he retinas use of his fingers and hands for typing." Id.

Based on consideration of the medical record and plaintiff's hearing testimony, the ALJ concurred with Dr. Michalik's conclusion that plaintiff had the residual functional capacity to perform light work, but that his existing impairments would affect his ability to climb ladders, ropes and scaffolds on more than an occasional basis. (Tr. 458–59). Based on these impairments, the ALJ incorporated postural limitations of occasional climbing of ladders, ropes and scaffolds into his residual functional capacity finding. (Tr. 456). Based on the record, the ALJ's reasoning for affording Dr. Michalik's opinion great weight in the residual functional capacity analysis is supported by substantial evidence. Plaintiff's second assignment of error is without merit insofar as it argues that the ALJ improperly gave significant weight to Dr. Michalik's opinion in assessing plaintiff's residual functional capacity.

Plaintiff also argues that the ALJ improperly gave great weight to Dr. Michalik because Dr. Michalik rendered his opinion while the record was still developing. As stated above, the function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard, 480 F. App'x at 776 (citing Perez, 415 F.3d at 461); Stringer, 465 F. App'x at 363 (citing Waters, 276 F.3d at 716). The ALJ – not the non-examining state expert – is responsible for assessing the entire body of record evidence and reaching a final conclusion on a claimant's disability status. The ALJ's decision states that he rendered his decision after "careful consideration of all the evidence," which includes the evidence that developed after Dr. Michalik issued his opinion (Tr. 453) (emphasis added). The ALJ did

23

not base his findings solely on Dr. Michalik's opinion, but rather considered every page in the record and thoroughly addressed all relevant record evidence to support his decision. "Evidence that was 'not in existence at the time of the administrative and district court proceedings, meets the "new" requirement for remand to the Secretary.'" Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quoting Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989)). Plaintiff makes no assertion that new evidence came to light after the ALJ rendered his decision. Because the record was complete before the ALJ issued his decision, the record evidence that came into existence after Dr. Michalik issued his opinion is not "new" evidence susceptible to remand. Plaintiff's second assignment of error is without merit insofar as it argues that the ALJ improperly gave great weight to Dr. Michalik based on the rendering of his opinion while the record was still developing.

As to plaintiff's argument that the ALJ improperly gave little weight to treating physician Dr. Ceasar, it is well established that

> [t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence. The opinion of a specialist generally is accorded greater weight than that of a non-specialist.

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is

24

conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455–56 (quotations and citations omitted) (ellipsis and brackets in original) (emphasis added).

The ALJ afforded little weight to Dr. Ceasar's opinion because Dr. Ceasar's conclusions were not well supported by his examination findings and were not consistent with plaintiff's reported activities. (Tr. 460). Dr. Ceasar examined and evaluated plaintiff on May 2, 2013, and issued an opinion stating that plaintiff has "some restrictions of his daily activities due to inability to go a full day of work without having severe pain and limited [range of motion] in his hands and feet." (Tr. 766). A physician's statement that a claimant is unable to work is not a medical opinion but rather an administrative finding that is reserved to the Commissioner. 20 C.F.R. 404.1527(e)(1)(3). Moreover, Dr. Ceasar's physical examination findings indicated that plaintiff had a normal range of motion and good strength in his lower extremities, which is consistent with plaintiff's medical findings throughout the record. (Tr. 458, 731–37, 765, 791–801). Dr. Ceasar also noted that plaintiff's antalgic gait and station resulting from rheumatoid arthritis flare-ups in his feet indicated that plaintiff may require an assistive device for occasional balance. (Tr. 766). However, Dr. Ceasar noted that plaintiff was able to squat and rise without assistance, touch his toes, walk heel to toe and ambulate without assistance during his examination. (Tr. 765). Dr. Ceasar's findings regarding plaintiff's hand edema and decreased grip strength in both hands due to frequent swelling and rheumatoid arthritis are consistent with non-examining physician Dr. Michalik's opinion. (Tr. 500, 765). The ALJ considered Dr. Ceasar's findings on hand swelling and decreased grip

strength in reaching his residual functional capacity conclusion, which includes postural limitations to offset the issues identified by Dr. Ceasar. (Tr. 461).

Generally, the ALJ must give more weight to an opinion that is consistent with the record as a whole. 20 C.F.R. § 404.1527. Based on the entire record and the inconsistencies between Dr. Ceasar's examination notes and final conclusion, the ALJ's reasoning for affording Dr. Ceasar's opinion minimal weight is supported by substantial evidence. Moreover, the ALJ did not wholly disregard Dr. Ceasar's findings in the residual functional capacity analysis, but rather took his findings on plaintiff's hand swelling and decreased grip strength into consideration and incorporated them into the postural limitations in the final residual functional capacity finding. Plaintiff's second assignment of error arguing that the ALJ improperly gave minimal weight to Dr. Ceasar's opinion does not merit relief.

Plaintiff argues that the ALJ improperly failed to explain the amount of weight he gave to the opinions of Drs. Brenner, Harris and LaCour in his residual functional capacity analysis. As stated above, residual functional capacity is an individual's ability to do physical and mental work activities on a sustained basis, despite any limitations resulting from his impairments. 20 C.F.R. § 404.1545. In assessing a claimant's residual functional capacity, the ALJ is tasked with evaluating and weighing every medical opinion he receives. 20 C.F.R. § 404.1527(c). "Medical opinions" are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including the claimant's symptoms, diagnosis and prognosis; what the claimant can still do despite his impairments; and the claimant's physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

The reports of Drs. Brenner, Harris and LaCour contain treatment notes regarding plaintiff's impairments and were discussed and considered in the ALJ's assessment of severity of plaintiff's impairments. (Tr. 459–60). The ALJ did not assign specific weight to the reports of these doctors in his analysis of plaintiff's residual functional capacity. However, these reports do not discuss the effect that plaintiff's impairments have on his ability to work or any physical restrictions or functional limitations resulting from his impairments. (Tr. 706–14, 717–29, 746–52, 775–85, 829–44). As such, the reports of Drs. Brenner, Harris and LaCour do not meet the definition of "medical opinions" detailed above and are not entitled to any particular assignment of weight by the ALJ. Even if the ALJ had considered these reports as "medical opinions," the ALJ's ultimate residual functional capacity finding would have been unaffected because none of these doctors noted any functional limitations beyond those the ALJ had already considered in his analysis. In contrast to the reports of Drs. Brenner, Harris and LaCour, the medical opinions of Drs. Michalik and Ceasar were assigned specific weight by the ALJ, based on Drs. Michalik and Ceasar's explicit findings on plaintiff's ability to work and his physical restrictions. (Tr. 460–61). Because the reports of Drs. Brenner, Harris and LaCour did not satisfy the definition of "medical opinions" entitled to any particular assignment of weight, plaintiff's second assignment of error is without merit insofar as it argues that the ALJ erred in failing to assign specific weight to their reports in his residual functional capacity analysis.

The court finds that Doucet's arguments are unavailing insofar as they assert that the ALJ improperly discounted plaintiff's testimony regarding his kidney disease and frequent

bathroom use in the ALJ's residual functional capacity assessment. As discussed above, the ALJ's decision specifically referenced plaintiff's testimony regarding his daily activities of cooking, cleaning, grocery shopping, attending sporting events, working part-time for the Pelicans and using a computer at the workplace to support the conclusion that plaintiff "retains a significant amount of physical functioning" and "the ability to engage in at least light exertion." (Tr. 459). Further, the ALJ stated that plaintiff's ability to use a computer in his part-time job "indicates that he retains use of his fingers and hands for typing." Id.

The ALJ also noted plaintiff's testimony that he received unemployment benefits in 2012 and 2013 and that he was looking for full-time employment at the time of the hearing. (Tr. 459, 477). "While not dispositive, contemporaneous applications for unemployment benefits and for disability benefits are inherently inconsistent and incompatible as there is no reasonable explanation for how a person seeking the latter benefits under the guise of being unable to work can simultaneously seek the former benefits claiming that he is ready and able to work." Green v. Berryhill, 2017 WL 3638437, at *11 (E.D. La. June 22, 2017).

Moreover, plaintiff's testimony alone is insufficient to establish disability because subjective complaints of pain or other symptoms must be corroborated by objective medical evidence. Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss, 269 F.3d at 522); Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). As detailed above, the objective medical evidence indicates plaintiff's normal bladder functioning and minimal limitations on his ability to perform workplace activities. (Tr. 499–500, 509–12, 770, 779–80, 829, 834, 838–39).

28

As he is required to do, the ALJ considered all of plaintiff's symptoms, including pain, and the extent to which the symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence in plaintiff's records. Luckey, 458 F. App'x at 326 (citing Scott, 770 F.2d at 485); Perez, 415 F.3d at 462. The ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in his articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). The ALJ has the responsibility to evaluate the credibility of the witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164), and the consistency between the witness's testimony and the other evidence in the record. Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ's explanation of his reasons for finding plaintiff not entirely credible or that plaintiff's testimony is inconsistent with the evidence as a whole is all that is required. Undheim v. Barnhart, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164; James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163; Godbolt v. Apfel, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999). The ALJ complied with these standards in the instant matter.

The ALJ need not address each aspect of the record in detail. "[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. [The court's]

review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here. Likewise, the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ adequately resolved inconsistencies in the record." <u>Giles</u>, 433 F. App'x at 251. Accordingly, plaintiff's second assignment of error lacks merit insofar as it argues that the ALJ discounted plaintiff's testimony.

CONCLUSION

The ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence. His residual functional capacity findings and determination that Doucet can perform light work, with certain postural limitations, are supported by substantial evidence.

**RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and his complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____13th_____ day of May, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] <u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.